IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**FAUSTINO XAVIER BETANCOURT-COLON**,
    Plaintiff,

v.

**SUPERMERCADOS MAXIMO, INC.**,
    Defendant.

Civil No. 22-1548 (BJM)

## OPINION AND ORDER

Faustino Xavier Betancourt-Colon ("Betancourt") sued Supermercados Maximo Inc. ("SuperMax") alleging unlawful discrimination in a place of public accommodation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"). Dkt. 1-2. SuperMax moved for summary judgment, Dkt. 25, and Betancourt opposed. Dkt. 28. Betancourt also moved for partial summary judgment, Dkt. 26, and SuperMax opposed. Dkt. 27. This case is before me by consent of the parties. Dkts. 9, 10.

For the reasons set forth below, SuperMax's motion for summary judgment is **DENIED**, and Betancourt's motion for partial summary judgment is **GRANTED**.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record "which it believes

demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). And the court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## BACKGROUND

For this motion, the parties agree Betancourt is disabled as the ADA defines the term. Dkt. 25 at 11; Dkt. 26 at 8. Specifically, they agree he suffers from (1) hypertension, (2) type II diabetes mellitus, (3) diabetic neuropathy, (4) osteoarthritis, (5) inflammatory arthritis, (6) hydrocephalus with a brain shunt, (7) congestive heart failure (20% heart function, dilated cardiomyopathy), (8) deformities in both feet, (9) chronic obstructive pulmonary disease, (10) sleep apnea, and (11) degenerative joint disease of the lumbar spine. Dkt. 26-1 ¶ 2; Dkt. 27 at 2 ¶ 2. They also agree he requires a wheelchair or scooter to move around and has been advised to avoid stressful situations and excessive physical exertion because of his difficulty breathing due to his congestive heart failure. *Id*. The parties further agree the Isla Verde SuperMax is a public accommodation. Dkt. 26-1 at 1 ¶ 4; Dkt. 27 at 2 ¶ 4.

On July 19, 2022, Betancourt visited the Isla Verde SuperMax to buy groceries. Dkt. 26-1 at 1 ¶ 3; Dkt. 27 at 2 ¶ 3. Though he avers he would like to return to the store, he claims he is

currently deterred from doing so due to various barriers he encountered on his shopping trip. Dkt. 26-1 at 5 ¶ 13. Specifically, Betancourt contends the store's meat, bakery, and customer service counters measure 51, 47, and 47.75 inches high respectively in violation of the ADA's 36-inch height limits for such counters. *Id.* at 2 ¶ 5(a)–(c). Though Betancourt's complaint alleges SuperMax violated the ADA by failing to implement nondiscriminatory policies and procedures, Dkt. 1-2 at 20 ¶ 53, it does not identify a specific policy or procedure that is discriminatory. SuperMax argues it addressed Betancourt's concerns and modified its Isla Verde store to comply with the ADA. Dkt. 27 at 8–12. Further, it hired Vincent Ferrer Quiñones ("Ferrer") to visit the facility and evaluate the changes made. Dkt. 25-8 at 1. Ferrer did so on December 21, 2023 and reported that the Isla Verde SuperMax complied with the ADA. *Id.*

## DISCUSSION

Congress passed the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). "Title III of the ADA prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations." *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128 (2005). To establish a prima facie Title III case, a plaintiff "must demonstrate that (1) he or she has a qualified disability under the ADA, (2) the defendant operates a place of public accommodation, and (3) the plaintiff was discriminated against as a result of his or her disability." *Medina-Rodriguez v. Fernandez Bakery, Inc.*, 255 F. Supp. 3d 334, 341 (D.P.R. 2017) (citing cases). Disability discrimination includes "a failure to remove architectural barriers[] and communication barriers that are structural in nature." 42 U.S.C. § 12182(b)(2)(A)(iv). In the case of "existing facilities," the plaintiff must show the removal of architectural barriers on defendant's property is "readily achievable," meaning it "is easily accomplishable and able to be carried out without much

difficulty or expense." *Medina-Rodriguez*, 255 F. Supp. 3d at 342. Courts may consider the nature of the ADA violations in determining whether it is plausible that their removal is readily achievable. *Id.* (citing *Marradi v. K&W Realty Inv. LLC*, 212 F. Supp. 3d 239, 246 (D. Mass. 2016)).

Depending on the date the SuperMax was constructed, either the 1991 or 2010 ADA Accessibility Guidelines ("ADAAG" or "Guidelines") apply. 28 C.F.R. § 36.406(a); *see also* 28 C.F.R. pt. 36 app. D (1991 Guidelines); 36 C.F.R. § 1191 (2010 Guidelines). SuperMax contends its Isla Verde store was built prior to 2010, Dkt. 25-2 at 1–2 ¶¶ 2–6, while Betancourt states it was built prior to 2012. Dkt. 26-2 at 6 ¶ 17. Under either scenario, SuperMax can comply with the ADA by satisfying the 1991 Guidelines. 28 C.F.R. app. § 36.406(a). And both parties measure its compliance per those Guidelines. Dkt. 25 at 9; Dkt. 26 at 10. However, I note that "[i]f a public accommodation is required to comply with the 1991 Standards but does not, it must 'be made accessible in accordance with the 2010 Standards.'" *Medina Rodriguez v. Canovanas Plaza Rial Econo Rial, LLC*, 2019 WL 5448538, at *9 (D.P.R. Oct. 23, 2019), *judgment clarified sub nom. Medina v. Canovanas Plaza Rial*, 2020 WL 12442283 (D.P.R. Jan. 3, 2020) (citing 28 C.F.R. § 36.406(a)(5)(ii)) (further citation omitted).

The ADA also contains different requirements for existing facilities and new constructions. Generally, public accommodations built for first occupancy after January 26, 1993 ("new constructions") discriminate against individuals with disabilities if they are not "readily accessible to and usable by" such individuals. 42 U.S.C. § 12183(a)(1); *United States v. Hoyts Cinemas Corp.*, 380 F.3d 558, 561 n.2 (1st Cir. 2004). Requirements governing "new construction" are stricter than those governing "existing facilities." *See Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1101 (11th Cir. 2011) ("Generally stated, existing facilities need not provide as extensive

access as new/altered facilities must provide."); *Twede v. Univ. of Washington*, 309 F. Supp. 3d 886, 900 (W.D. Wash. 2018) ("The overall policy of the ADA is to require relatively few changes to existing buildings, but to impose extensive design requirements when buildings are modified or replaced.") (internal citations and quotations omitted). Thus, a facility that already existed when the ADA was enacted must only remove "architectural barriers" where doing so is "readily achievable." *See* 42 U.S.C. § 12182(b)(2)(A)(iv). In contrast, new construction must comply with the Attorney General's design standards unless an entity can demonstrate that compliance is "structurally impracticable." 42 U.S.C. § 12183(a)(1); *Hoyts Cinemas Corp.*, 380 F.3d at 561 n.2. "Full compliance will be considered structurally impracticable only in those rare circumstances when the unique characteristics of terrain prevent the incorporation of accessibility features." 28 C.F.R. § 36.401(c)(1).

 Here, the parties' contentions that the Isla Verde SuperMax was built before either 2010 or 2012 do not clarify whether it is an existing facility or new construction. Regardless, Betancourt contends he must show that his proposed modifications are readily achievable and that he did so. Dkt. 26 at 10. Moreover, on summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan*, 904 F.2d at 115. Accordingly, I examine Betancourt's motion for summary judgment assuming that he must show his proposed changes are readily achievable. I note that I previously stated this same ADA plaintiff needed to furnish the date of a facility's construction to prevail on summary judgment. *See Betancourt-Colon v. Arcos Dorados P.R.,* 2023 WL 171123, at *2 (D.P.R. Jan. 12, 2023) (nevertheless analyzing the motion as though the public accommodation were an existing facility) (citing *Disabled Americans for Equal Access, Inc. v.*

Case 3:22-cv-01548-BJM   Document 35   Filed 05/01/24   Page 6 of 17

*Betancourt-Colon v. Supermercados Maximo Inc.*, Civil No. 22-1548 (BJM)                                                                6

*Compra Hosp. Pavia, Inc.*, 2004 WL 5568603 at *8 (D.P.R. Aug. 27, 2004) (same)). However, as explained below, I find that unnecessary in this case. I turn to the alleged barriers.

    **I.**    **Discrimination Against Betancourt**

Because the parties agree Betancourt has a qualifying disability, Dkt. 25 at 11; Dkt. 26 at 8, and the Isla Verde SuperMax is a public accommodation, Dkt. 26-1 at 1 ¶ 4; Dkt. 27 at 2 ¶ 4, the next question is whether Betancourt suffered discrimination. As mentioned, discrimination includes "a failure to remove architectural barriers, and communication barriers that are structural in nature." 42 U.S.C. § 12182(b)(2)(A)(iv). Betancourt contends he encountered barriers at SuperMax's meat counter, bakery counter, and customer service counters. Dkt. 1-2 at 11–12; Dkt. 26 at 12. While it never explicitly states these counters violated the ADA's height limit, SuperMax moved for summary judgment based on renovations it made to the counters and opposed Betancourt's motion for summary judgment stating, "[g]iven the fact that SuperMax renovated the counters and there are no architectural barriers left, the controversy in this case is moot." Dkt. 27 at 12. Moreover, SuperMax's own evidence indicates the counters in question exceed the ADA'S 36-inch height limit. *See* Dkt. 25-8 at 10–11 (photos of meat, bakery and customer services counters show original counters rise above 36 inches). Accordingly, I find that Betancourt suffered discrimination during his visit to the Isla Verde SuperMax because the meat, bakery, and customer service counters violated the ADA's height limit.

    **II.**    **SuperMax's Motion – Mootness**

However, SuperMax contends Betancourt's claims are now moot because it has altered the counters to comply with the ADA. Dkt. 25 at 11–14. Betancourt argues the changes are insufficient, Dkt. 26 at 11–15, and SuperMax responds by reiterating its mootness argument. Dkt. 27 at 11–12. An ADA claim that was valid to begin with "can become moot because of a change in the fact situation underlying the dispute, making relief now pointless*." Horizon Bank & Tr. Co. v.*

*Massachusetts*, 391 F.3d 48, 53 (1st Cir. 2004). But "[t]he burden of establishing mootness rests squarely on the party raising it, and '[t]he burden is a heavy one.'" *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953)). It must be "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (citing *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968). "To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *W. T. Grant Co.*, 345 U.S. at 633. I examine whether SuperMax's alterations mooted Betancourt's claims.

1. **Meat Counter**

Betancourt argued the meat counter measures approximately 51 inches high in violation of the ADAAG's 36-inch height limit. Dkt. 26 at 12. SuperMax responds that it has since addressed this issue by providing a nearby auxiliary counter measuring 33.75 inches high. Dkt. 27 at 11. Betancourt insists this modification still violates the ADA. Dkt. 28 at 4–10.

The 1991 Guidelines differentiate between counters that have cash registers and those that do not. *See* 28 C.F.R. pt. 36 app. D § 702. Here, it is unclear whether the SuperMax meat counter has a cash register. SuperMax calls it a "sales and service counter" without discussing the presence of a cash register. Dkt. 25 at 13. Further, Betancourt and SuperMax's purported expert, Ferrer, both describe the meat counter as a "sales counter," Dkt. 26 at 12; Dkt. 25-8 at 9–10, but neither clarifies whether it has a cash register. And photos from Ferrer's report shed no light on the issue. *Id.* at 10.

Nevertheless, SuperMax contends 1991 ADAAG § 7.2(2), which applies to counters without cash registers, governs this dispute, Dkt. 25 at 11–13, and Betancourt seems to agree. *See* Dkt. 24 (informative motion highlighting recent decision grounded in ADAAG § 7.2(2) which Betancourt claims has a "significant impact" on this case); Dkt. 26 at 13–15 (noting ADAAG §

7.2 distinguishes counters depending on presence of a cash register and citing caselaw discussing ADAAG § 7.2(2) as reason to reject SuperMax's equivalent facilitation argument). Accordingly, I will assume this counter has no cash register and that ADAAG § 7.2(2) consequently applies.

Section 7.2(2) addresses requirements for "counters that may not have a cash register but at which goods or services are sold or distributed." 28 C.F.R. pt. 36 app. D § 7.2(2). It provides that a portion of the main counter must measure at least 36 inches long and no more than 36 inches high. *Id.* § 7.2(2)(i). Alternatively, it states, "an auxiliary counter with a maximum height of 36 in (915 mm) in close proximity to the main counter shall be provided." *Id.* § 7.2(2)(ii). If neither is offered, ADAAG § 7.2(2) allows for an "equivalent facilitation," *id.* § 7.2(2)(iii), which the 1991 Guidelines define as "[d]epartures from particular technical and scoping requirements of this guideline . . . where the alternative designs and technologies used will provide substantially equivalent or greater access to and usability of the facility." *Id.* § 2.2.

SuperMax contends it added an integrated or adjacent counter measuring 33.75 inches. Dkt. 25 at 13–14; Dkt. 27 at 2, 8. It is unclear whether SuperMax believes this is an auxiliary counter or an equivalent facilitation. But either way, it is insufficient to comply with the ADA.

As Betancourt notes, this court recently considered a similar modification to a meat counter at a SuperMax store in Trujillo Alto, Puerto Rico. *See* Dkt. 24 (citing *Betancourt-Colon v. Acoba Realty Dev.*, 20-cv-1424-CVR, slip op. at 12–18 (D.P.R. Jan. 10, 2024)). In that case, the court observed, "[t]he meat counter facility consists of a 33 inch-high small, black table placed horizontally so that it juts out from the vertical, bigger counter area (forming an 'L' together). It has a bell and a sign indicating the person should ring for assistance." *Acoba Realty*, 20-cv-1424-CVR, slip op. at 13. The meat counter here is similar except that the black table sits beside the main counter and does not appear to jut out to form an "L" shape. *Compare* Dkt. 25-8 at 10 *with*

*Acoba Realty*, 20-cv-1424-CVR (Dkt. 86-5 at 11). In analyzing the L-shaped counter, the *Acoba Realty* court observed the following:

> There is no staff assigned to the tables as set up, and SuperMax offers no insight as to how this arrangement works. Presumably, the Plaintiff would view the products and ask for them over the regular height counter, and would be handed the products by an employee who would simply walk around the main counter, to the small table.

*Acoba Realty*, 20-cv-1424-CVR, slip op. at 16. It then noted that, "[s]uch an arrangement has already been found to be non-compliant" with the ADA. *Id.* (citing *Medina v. Canóvanas Plaza Rial, et al.*, 2020 WL 12442283, at *2 (D.P.R. Jan. 3, 2020); *California Found. for Indep. Living Ctrs. v. Cty. of Sacramento*, 142 F. Supp. 3d 1035, 1056 (E.D. Cal. 2015)). In *Medina*, I examined a supermarket's system of taking orders over a counter that rose above the ADA's height limit, handing non-disabled customers their orders over that counter, and handing disabled customers their orders through a nearby door. 2020 WL 12442283, at *2. Though the supermarket argued this amounted to an equivalent facilitation under ADAAG § 7.2(2)(iii), I disagreed, stating:

> [I]f Defendants' construction of 'equivalent facilitation' were to stand, then the counter requirements contained in sections 7.2(2)(i) and (ii) would be rendered meaningless. Public establishments would be permitted to construct transaction counters of any height, regardless of the needs of their disabled customers, and simply conduct all transactions with disabled customers to the side of the counter. But this would not provide 'substantially equivalent or greater access.' 28 C.F.R. pt. 36 app. D § 2.2.

*Id.*

In reaching this conclusion, I examined another court's decision regarding an airport ticket counter consisting of "an upper vertical front measuring 48 inches high and a lower portion that jutted out horizontally from the vertical front." *Id.* (citing *California Found. for Indep. Living Centers*, 142 F. Supp. 3d at 1050). I noted the *California Found.* court's holding that "if such an arrangement constituted 'equivalent facilitation,' 'then almost any counter arrangement could pass muster under section 7.2(2), because an employee and passenger or patron can always walk around

or pass documents around a counter.'" *Id.* (citing 142 F. Supp. 3d at 1058). After comparing these cases to SuperMax's L-shaped meat counter, the *Acoba Realty* court determined it did not comply with the ADA.

I note the table in *Acoba Realty* stuck out from the main counter to form an "L" shape, while the table at issue here appears to fit between the counter and the wall to form a straight line. *See* Dkt. 25-8 at 10. However, if businesses may not satisfy the ADA by instructing employees to walk to the side of the counter to serve customers in wheelchairs, I fail to see how adding a table to the side of the counter, as SuperMax did here, satisfies the ADA. This arrangement still requires employees and customers to transact business to the side of the main counter, which the *Acoba Realty*, *Medina*, and *California Found.* courts all found unacceptable. And the sign asking customers to press a button for assistance, Dkt. 25-8 at 10, inescapably leads to the conclusion that, as in *Acoba Realty*, the auxiliary counter is not regularly staffed. I fail to see how this provides "substantially equivalent or greater access." 28 C.F.R. pt. 36 app. D § 202. Accordingly, whether the table here formed an "L" shape is inconsequential.

To further illustrate the point, I note the *Acoba Realty* court also approvingly cited a Ninth Circuit case examining a lowered portion of a fast-food restaurant's counter. 20-cv-1424-CVR, slip op. at 17 (citing *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1173 (9th Cir. 2010)). *Antoninetti* discussed a restaurant's contention that its counter complied with the ADA "because the food preparation counter adjoins the transaction station, which is 34 inches high, and therefore . . . either a 'portion of the main counter' or an 'auxiliary counter' is below the 36 inch maximum height." 643 F.3d at 1173. Like the counter in *Antoninetti*, SuperMax's meat counter features a main counter the violates the ADA's height limit and a purported "auxiliary counter" that complies with the limit. However, the *Antoninetti* court rejected the configuration there

because "[u]nder the Guidelines, the food preparation counter and the transaction station are different entities, even though they are next to each other and adjoined." *Id.* Essentially, it found these counters "serve different functions." *Id.* (explaining that customers view and select ingredients at the main counter while they pay for and receive their order at the lowered counter). And because customers in a wheelchair could not fully participate in the selection or preparation of their food even with the lowered transaction station, that modification did not comply with the ADA. *Id.*

Here, neither party explains how the SuperMax meat counter operates. It is unclear, for example, whether patrons view and select items at the main counter as in *Antoninetti* and, if so, whether customers in a wheelchair can fully participate in that process. However, as discussed, the parties agree the main counter exceeds the ADA's height limit. Thus, because Betancourt established an ADA violation, SuperMax bears the heavy burden of showing it has remedied the violation rendering Betancourt's claims moot. *Mangual*, 317 F.3d at 60. Given caselaw stating that attending wheelchair-bound patrons to the side of the main counter will not suffice, SuperMax has failed to satisfy its burden to show Betancourt's claim is moot. Instead, Betancourt demonstrated the violation is ongoing. Accordingly, SuperMax's motion for summary judgment on this issue is **DENIED**.

   **2. Bakery Sales Counter**

Betancourt argues the bakery sales counter measures approximately 47 inches high, which also violates the ADAAG's 36-inch height limit. Dkt. 26 at 12. As with the meat counter, SuperMax contends it has since corrected this issue by providing an ADA-compliant integrated or adjacent sales and service counter. Dkt. 25 at 13–14; Dkt. 25-8 at 10 (photos labeled "Compliant Sales Counter at Cafeteria"); Dkt. 27 at 11–12. However, this claim suffers from the same deficiencies as SuperMax's argument regarding its meat counter. Further, unlike the auxiliary counter

SuperMax placed beside its meat counter, the purportedly integrated or adjacent bakery sales counter clearly features a cash register. *See* Dkt. 25-8 at 9 (photos labeled "Consolidated Service Counter at Cafeteria"). It thus even more closely resembles the noncompliant configuration in *Antoninetti* where patrons selected items at one counter and paid for them at another. Accordingly, for the same reasons discussed above, SuperMax failed to demonstrate Betancourt's claim regarding its bakery counter is now moot. On the contrary, Betancourt demonstrated the violation is ongoing. Thus, SuperMax's motion for summary judgment on this issue is **DENIED**.

3. **Main Service Counter**

Lastly, Betancourt argues the main service counter measures 47.75 inches high in violation of the ADA's 36-inch height limit. Dkt. 26 at 12. SuperMax seeks summary judgment arguing it complied with ADAAG § 7.2(2) because it placed an auxiliary service counter measuring 33.25 inches high close to the customer service counter. Dkt. 25 at 13; *see also* Dkt. 25-8 at 11. As Betancourt notes, that counter, more accurately described as a table, is located directly in front of the customer service counter. Dkt. 26 at 13.

The *Acoba Realty* court examined the same modification. 20-cv-1424-CVR, slip op. at 16 (noting table placed directly in front of customer service counter); *id.* (Dkt. 86-5 at 9). As in that case, the purported modification raises more questions than answers. For example, it is unclear how a wheelchair user at the purported auxiliary counter could see an employee located behind the main counter. And it is even less clear how these two people could transact business with each other. *See Acoba Realty*. 20-cv-1424-CVR, slip op. at 16 ("How is the wheelchair bound patron going to speak to [an employee behind the counter], when he does not see the person behind the counter space and instead, faces a wall? How is the order going to be handed to that patron?"). Though SuperMax offered no explanation, the *Acoba Realty* court inferred only one possibility. The employee will "go[] around the tall counter and giv[e] the product to the wheelchair-bound

patron, a method that has already been found to be non-ADA compliant." *Id.* (citing *California Found.*, 142 F. Supp. 3d at 1057). The same is true here. Thus, SuperMax's modification failed to moot Betancourt's customer service counter claim and Betancourt instead established the ADA violation is ongoing Accordingly, SuperMax's motion for summary judgment on this issue is **DENIED**.

   4. **Additional Barriers and Discriminatory Policies**

SuperMax also moves for summary judgment with respect to purported barriers at its Açaí shop and its bathrooms. Dkt. 25 at 13–14. However, though Betancourt mentioned barriers in the bathroom during a deposition, Dkt. 25-1, at 5–6, he alleged no barriers in the bathroom or at the Açaí shop in his complaint. Further, his time to amend that complaint has long since passed. *See* Dkt. 8 ("Amended Pleadings due by 2/6/2023."). And "for purposes of Rule 8, a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 909 (9th Cir. 2011) (denying summary judgment regarding barriers plaintiff only identified in expert report). Accordingly, purported barriers in the bathroom and Açaí Shop are not at issue here. *See also Moeller v. Taco Bell Corp.*, 966 F. Supp. 2d 899, 904 (N.D. Cal. 2013) (holding on summary judgment in ADA case that "to the extent that the [complaint] does not identify specific barriers encountered by specific plaintiffs at specific stores, those claims are not presently in the case").

I note that Betancourt's complaint also contains a section discussing "discriminatory practices and policies" at SuperMax. Dkt. 1-2 at 12–16. However, the purportedly discriminatory policy is the failure to modify architectural barriers in its store. *Id.* That is more properly characterized as an architectural barrier claim and Betancourt's barrier claims are addressed above. To the extent Betancourt takes issue with any additional SuperMax policies, his failure to

specifically identify them leaves them outside the scope of this case. *Moeller*, 966 F. Supp. 2d at 904.

In conclusion, Betancourt stated architectural barrier claims regarding the SuperMax's meat counter, bakery counter, and customer service counter. And SuperMax has not shown that Betancourt's claims are moot because it has not satisfied its heavy burden of showing that past violations have been remedied. Moreover, Betancourt has shown the violations are ongoing.

### III.    Betancourt's Motion – Ready Achievability

Betancourt argues he is entitled to partial summary judgment because he has established ADA violations at SuperMax's counters and proposed readily achievable modifications. Dkt. 26. Given my findings above that Betancourt established ongoing ADA violations, I turn to his argument that he proposed readily achievable modifications.

In existing facilities, the ADA only requires defendants to remove architectural and structural barriers which block access by persons with disabilities so long as "such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The ADA defines the term "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* § 12181(9). Factors bearing on whether barrier removal is readily achievable include:

> (A) the nature and cost of the action needed . . . ;
>
> (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
>
> (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type and location of its facilities; and
>
> (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

*Id.*

Further, courts consider "the type of operation or operations of any parent corporation or entity," if applicable. 28 C.F.R. § 36.104. First, the plaintiff "must initially present evidence tending to show that the suggested method of barrier removal is readily achievable under the particular circumstances. If Plaintiff does so, Defendant then bears the ultimate burden of persuasion that barrier removal is not readily achievable . . . ." *Colo. Cross Disability Coal.*, 264 F.3d at 1002–03 (citing *Speciner v. NationsBank, N.A.*, 215 F. Supp. 2d 622, 632 (D. Md. 2002); *Access Now, Inc. v. S. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1363 (S.D. Fla. 2001)). The "readily achievable" standard is "a fact-intensive inquiry that will infrequently be decided on summary judgment." *Theodore v. Lowell Gen. Hosp.*, 2017 WL 1164486, at *4 (D. Mass. Mar. 28, 2017) (citing *Access Now*, 161 F. Supp. 2d at 1371).

Betancourt proposed lowering the counters to 36 inches and he contends he demonstrated these changes are readily achievable by submitting a facially plausible estimate of costs. Dkt. 26 at 15–16 (citing *Rodriguez-Burgos v. Arcos Dorados Puerto Rico, LLC*, 2023 WL 2693788, at *12 (D.P.R. Mar. 28, 2023); *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 372 (2d Cir. 2008)). Betancourt's estimate, contained in his unsworn affidavit, states modifying each counter would cost SuperMax between $2,000 to $6,000, plus $500 to $2,000 in labor costs, per counter. Dkt. 26-2 at 3. The total cost would thus range from $7,500 to $24,000. He based this estimate on his personal experience and online research regarding ADA compliance without clarifying what either entailed. *Id.* SuperMax does not discuss the issue of ready achievability in its summary judgment motion or its opposition to Betancourt's motion.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). However, "if a

party submits an inadmissible affidavit and the opposing party does not move to have it stricken, any objections to its consideration are deemed to have been waived and it may properly be considered by the court when ruling on the motion." *Davis v. Sears, Roebuck & Co.*, 708 F.2d 862, 864 (1st Cir. 1983). Courts disregard this rule "[o]nly to prevent a gross miscarriage of justice." *Id.*

Given the lack of explanation, it is unclear whether Betancourt's personal experience and online research render him competent to testify regarding the cost of lowering SuperMax's three counters. However, SuperMax waived any argument on this issue because it never moved to strike Betancourt's affidavit. And though Betancourt offered no analysis of SuperMax's finances, workforce, or the effect of his proposed modifications on its operations, SuperMax moved to stay this case in a motion stating that it was going to renovate the counters in line with the renovations approved by the *Acoba Realty* court. Dkt. 29 at 4 (citing Dkt. 29-3). And while "[t]he court need consider only the cited materials [in a summary judgment motion,] it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see also Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014) ("To determine whether a trial-worthy issue exists, we look to all of the record materials on file, including the pleadings, depositions, and affidavits."). Accordingly, despite Betancourt's failure to further substantiate his cost estimates or discuss the remaining ready achievability factors, I find SuperMax has conceded that modifying its counters is readily achievable. Given that Betancourt's only claims address the counters, there is no remaining dispute. Thus, I treat Betancourt's motion for partial summary judgment as a motion for summary judgment and that motion is **GRANTED**.

## CONCLUSION

For the above reasons, Betancourt's request for declaratory and injunctive relief is **GRANTED**. I find the meat counter, bakery counter, and customer service counter at the Isla Verde SuperMax violate the ADA as outlined above. Thus, SuperMax is ordered to alter those counters in accordance with the 2010 ADAAG. *See* 28 C.F.R. § 36.406(a)(5)(ii) (facilities subject to 1991 Guidelines that violate them must be altered to comply with the 2010 Guidelines). Specifically, it shall lower the meat, bakery, and customer service counters to comply with either 2010 ADAAG § 904.4.1 (parallel approach) or § 904.4.2 (forward approach).

**Costs and Attorney's Fees**

Successful ADA plaintiffs may receive "a reasonable attorney's fee, including litigation expenses, and costs." 28 C.F.R. § 36.505. Accordingly, Betancourt may apply for attorneys' fees and litigation costs in accordance with Federal Rule of Civil Procedure 54(d).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of May 2024.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge